

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -5  PM 3: 34

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH E. DICKERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1486** |
| **WARDEN BURL CAIN** | **SECTION "J" (2)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

___ Fee_____
X  Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No_____

for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Joseph E. Dickerson, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 4, 1996, Dickerson was indicted in Jefferson Parish for the second degree murder of Larry J. London.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> On February 27, 1996, Detective Grey Thurman was notified at approximately 6:40 p.m. of the shooting death of the victim which occurred at 528 Commerce Street in Gretna.  He arrived 10 minutes later.  Prior to the detective's arrival, Deputy Brent Coussou, a patrol deputy, received a 911 telephone call, and responded within two and one-half to three minutes.  He secured the scene and saw no weapon in the immediate vicinity of the victim. Detective Thurman testified the victim and casings were located in the middle of the driveway.  There were four casings around the body, and four casings near the back of a car.  The casings came from a semiautomatic handgun.
>
> Ron Ainsworth, a crime scene technician, photographed the scene and took measurements.  He recovered the 9mm casings, one unknown projectile, an unknown copper jacket and unknown fragments.  He did not look for any fingerprints.  Detective Thurman explained that he did not request the casings be sent off for fingerprint analysis because in his 19 years of experience in law enforcement, he had never been successful in obtaining fingerprints from casings. He also felt the fingerprints were unnecessary since he had two eyewitnesses to the incident.
>
> Mark Bone, a forensic investigator with the Coroner's Office, testified he was present at the scene and that he was the person responsible for removing the victim's personal effects.  The victim did not possess a firearm.
>
> Dr. Fraser Mackenzie, the pathologist with the Coroner's Office who performed the autopsy, testified as an expert in the field of forensic pathology.

---

[2] Rec. Doc. No. 1, Petition.

[3] St. Rec. Vol. 1 of 10, Indictment, 4/4/96.

Dr. Mackenzie stated the cause of death was multiple gunshot wounds to the body. The victim had ten entrance wounds to the body, four of which were fatal.

Dr. Mackenzie removed bullet pellets from the body, which he gave to a technician from the Sheriff's Office. He testified that the injuries to the back of the body were consistent with the victim's back facing the source of the gunfire. A toxicology report on the victim revealed the absence of drugs or alcohol.

Detective Thurman received information that Hankins was present and witnessed the incident. He interviewed Hankins on February 28, 1996. Watkins was also identified as a witness. The detective interviewed Watkins on February 29, 1996. He recorded and transcribed the statements he took from these witnesses. As a result of these statements, Dickerson became the main suspect. Hankins and Watkins provided the detective with a description of the vehicle the suspect was driving. They described the vehicle as a fairly new mid-size blue car, which was either an Altima, or which was similar to an Altima. The detective presented a photographic lineup to Watkins and Hankins, which consisted of six photographs. Both identified Dickerson.

Detective Thurman obtained an arrest warrant for Dickerson. He attempted to locate the defendant at his last known address, 532 Commerce Street, but he was unsuccessful. Dickerson was later arrested and was detained in New Orleans, where Detective Thurman conducted an interview.

After being advised of his Miranda rights, Dickerson agreed to give a statement. He understood and waived the rights, and signed a waiver form which recited these rights.

Detective Thurman stated that Dickerson said that he owned an older model Cutlass for which he had an unusual blue interior built. The interior featured "Louisiana" in white leather. The car was stolen but never recovered.

A week before the shooting, Dickerson heard that this interior was in a car seen in the Commerce Street neighborhood. He obtained a gun, went to Commerce Street, where he viewed the car and then shot and killed London.

Dickerson testified at trial he did not shoot the victim. Although he admitted giving a statement to the detective, he denied its accuracy.

State v. Dickerson, 751 So.2d 425, 428-29 (La. App. 5th Cir. 2000); State Record

Volume 5 of 10, Fifth Circuit Opinion, 99-KA-353, January 28, 2000.

Dickerson's trial initially commenced on September 18 and 19, 1997.[4] On the second day of jury selection, the state trial court ended the proceedings due to a conflict of interest between defense counsel and Dickerson.[5]

After new counsel enrolled, Dickerson was tried before a 12-person jury on June 2 and 3, 1998.[6] He was found guilty as charged.[7] At a hearing held June 17, 1998, the state trial court denied Dickerson's motion for a new trial and sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence.[8] That same day, Dickerson timely filed a pro se notice of appeal in accordance with La. Code Crim. P. art. 914 and art. 914.1.[9] The trial court later issued an order directing that the appeal be processed and set a return date.[10] See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765 (5th Cir. 2004) (Louisiana courts have declined to penalize the applicant

---

[4]St. Rec. Vol. 1 of 10, Trial Minutes, 9/18/97; Trial Minutes, 9/19/97; Trial Transcript, 9/18/97; Trial Transcript, 9/19/97.

[5]St. Rec. Vol. 1 of 10, Trial Minutes, 9/19/97; Trial Transcript, 9/18/97.

[6]St. Rec. Vol. 1 of 10, Trial Minutes, 6/2/98; Trial Minutes, 6/3/98; St. Rec. Vol. 2 of 10, Trial Transcript, 6/2/98; St. Rec. Vol. 3 of 10, Trial Transcript (cont'd), 6/2/98; Trial Transcript, 6/3/98; St. Rec. Vol. 4 of 10, Trial Transcript (cont'd), 6/3/98.

[7]St. Rec. Vol. 1 of 10, Trial Minutes, 6/3/98; Jury Verdict, 6/3/98; St. Rec. Vol. 4 of 10, Trial Transcript (cont'd), p. 273, 6/3/98.

[8]St. Rec. Vol. 1 of 10, Motion for New Trial and/or Judgment of Acquittal, 6/17/98; Sentencing Minutes, 6/17/98; St. Rec. Vol. 4 of 10, Sentencing Transcript, 6/17/98.

[9]St. Rec. Vol. 1 of 10, Motion for Notice of Appeal, 6/17/98; Appeal Order, 9/17/98.

[10]St. Rec. Vol. 1 of 10, Appeal Order, 9/17/98.

and have considered writ applications filed beyond the 30-day period timely where "it was the trial court who violated Rule 4-3.")

On April 7, 1999, while awaiting briefing to the appellate court, Dickerson filed a pro se motion for a new trial in the state trial court, alleging that the State used the perjured testimony of Gladys Johnson and withheld evidence of the perjury from the defense.[11]  The state trial court denied the motion on May 25, 1999.[12]

On May 26, 1999, Dickerson's counsel filed a brief asserting nine assignments of error on direct appeal:[13]  (1) The trial court erred when it overruled defendant's objections to the State's peremptory strikes of black prospective jurors.  (2) The trial court erred by allowing the State to present during closing argument a taped prior inconsistent statement of prosecution witness Corey Watkins.  (3) The trial court erred in allowing the jury to hear a portion of defendant's recorded statement to Detective Thurman after he invoked his right to counsel.  (4) The trial court erred by admitting identification evidence by Watkins, which resulted in a suggestive photographic line-up.  (5) The trial court erred by admitting identification evidence by Adam Hankins, which resulted in a suggestive photographic line-up.  (6) The trial court erred when it refused

---

[11]St. Rec. Vol. 5 of 10, Motion for New Trial, 4/7/99; see also, Supplement to Motion for New Trial (undated).

[12]St. Rec. Vol. 5 of 10, Minute Entry, 5/25/99.

[13]St. Rec. Vol. 4 of 10, Appeal Brief, 99-KA-353, 5/26/99.

to grant the motion for a new trial based the unavailability of witnesses Marlin Dickerson and Calvin Perkins. (7) The trial court erred when it refused to grant the motion for a new trial based on newly discovered evidence that prosecution witness Gladys Johnson had committed perjury. (8) Defendant received ineffective assistance of counsel when his lawyer failed to object to the prosecutor's trial tactics, alienated the jury by mispronouncing the detective's name, and failed to exercise due diligence in preparing for trial. (9) The trial court erred when it failed to allow 24 hours between denial of the motion for a new trial and sentencing. (10) The indictment was invalid in its form.

On July 9, 1999, Dickerson filed a pro se supplemental brief in which he alleged that the indictment was defective and added to counsel's argument regarding the ineffective assistance of his trial counsel as it related to the alleged lack of preparation for trial and the failure to investigate and subpoena witnesses.[14]

The Louisiana Fifth Circuit affirmed the conviction and sentence on January 28, 2000.[15] The Court held that the claims were meritless or, in some instances, procedurally improper and barred.  For example, as to the appeal's third alleged error regarding admission of Dickerson's statement to the police, the court held that the statement was made after full knowledge and waiver of Dickerson's <u>Miranda</u> rights and was properly admitted at trial.  The court also ruled that the trial court did not err in admitting the

---

[14]St. Rec. Vol. 4 of 10, Pro Se Supplemental Brief, 7/9/99.

[15]<u>State v. Dickerson</u>, 751 So.2d at 425; St. Rec. Vol. 5th Cir. Opinion, 99-KA-353, 1/28/00.

identification testimony of Watkins and Hankins[16] because there was no indication of any likelihood of a misidentification.  In addition, the court declined to rule on the ineffective assistance of counsel issues, finding them to be more appropriately addressed through an application for post-conviction relief.

On March 14, 2000, Dickerson filed a pro se writ application with the Louisiana Supreme Court.[17]  In that application, Dickerson raised four grounds for relief: (1) The appellate court erred in finding portions of his statement admissible after he invoked his right to counsel. (2) The appellate court erred in finding that the Watkins identification testimony was not based on a suggestive process. (3) The appellate court erred in finding that the Hankins identification testimony was not based on a suggestive process. (4) The appellate court erred when it failed to consider denial of the motion for a new trial based on newly discovered evidence of Ms. Johnson's telephone records.

The Louisiana Supreme Court denied Dickerson's application without reasons on January 12, 2001.[18]  On February 19, 2001, Dickerson filed an application for rehearing

---

[16]For some unexplained reason, the court referred to Hankins as "Davis."

[17]St. Rec. Vol. 9 of 10, La. S. Ct. Writ Application, 00-KO-0750, 3/14/00; St. Rec. Vol. 5 of 10, La. S. Ct. Letter, 2000-KO-750, 3/14/00.

[18]State v. Dickerson, 778 So.2d 1153 (La. 2001); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2000-KO-0750, 1/12/01.

with the Louisiana Supreme Court, which was also denied without reasons on March 23, 2001.[19]

Thereafter, on April 2, 2001, Dickerson filed a pro se petition for writ of certiorari in the United States Supreme Court.[20]  The petition was denied on June 29, 2001[21] and Dickerson's conviction became final that same day.  Geisberg v. Cockrell, 288 F.3d 268 (5th Cir.) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), cert. denied, 537 U.S. 1072 (2002); Crutcher v. Cockrell, 301 F.3d 656 (5th Cir. 2002); Hoffman v. Louisiana, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), cert. denied, 531 U.S. 946 (2000).

Nine months later, on March 22, 2002, Dickerson, through retained counsel, filed an application for post-conviction relief in the state trial court asserting seven grounds for relief:[22] (1) Petitioner was denied due process and prejudiced when the trial court overruled defendant's objections to the State's peremptory strikes of black prospective jurors. (2) Petitioner was denied due process and prejudiced when the trial court allowed

---

[19]St. Rec. Vol. 9 of 10, Application for Rehearing, 00-KO-750, 2/19/01; State v. Dickerson, 787 So.2d 1005 (La. 2001); St. Rec. Vol. 9 of 10, La.. S. Ct. Order, 2000-KO-750, 3/23/01.

[20]St. Rec. Vol. 5 of 10, U.S. S.Ct. Letter, 00-9876, 5/10/01.

[21]Dickerson v. Louisiana, 533 U.S. 957 (2001); St. Rec. Vol. 5 of 10, U.S. S.Ct. Order, 00-9876, 6/29/01.

[22]St. Rec. Vol. 6 of 10, Application for Post Conviction Relief, 3/22/02.

the State to present during closing argument a taped prior inconsistent statement by Watkins. (3) Petitioner was denied due process and prejudiced when the trial court allowed the jury to hear a portion of defendant's recorded statement after he invoked the right to counsel. (4) Petitioner was denied due process and prejudiced when the trial court admitted identification testimony from Watkins and Hankins, which resulted from a suggestive photographic line-up. (5) Petitioner was denied due process when the trial court denied the motion for a new trial based on unavailable witnesses and the discovery of new evidence. (6) He received ineffective assistance of trial counsel when his lawyer failed to sequester witnesses, failed to obtain telephone records, opened the door to the introduction of a previously suppressed statement of defendant, and failed properly to object to prosecution tactics. (7) The system for selecting grand jury forepersons was discriminatory and unconstitutional. The sixth claim was supplemented on March 25 and June 3, 2002, by adding that counsel was ineffective for failure to file a motion to quash the indictment and that lead trial counsel was unprepared for trial and failed to request issuance of a subpoena for telephone records, which petitioner requested in his supplemental filings.[23]

---

[23]St. Rec. Vol. 6 of 10, Supplement to Application for Post-Conviction Relief, 3/25/02; Supplement to Application for Post-Conviction Relief and Motion for Evidentiary Hearing, 6/3/02.

On July 3, 2002, the trial court denied the application and the supplemental arguments and Dickerson's request for a subpoena.[24]  The court held that the first five claims had already been raised on direct appeal and were therefore repetitive.  The court further held that the seventh claim was barred from review because it had not been raised on direct appeal and was waived for failure to file a motion to quash.  Finally, the court determined that the ineffective assistance of counsel claims were appealable issues and were barred from review because they had not been raised on appeal.  The court also held that the record did not establish deficient performance or prejudice as required by Strickland v. Washington, 466 U.S. 668 (1984).

On July 31, 2002, defense counsel filed in the state trial court a motion for rehearing, urging the court to reconsider the claims and grant the subpoena request which would show that the witness, Gladys Johnson, committed perjury, that counsel was ineffective for failing to subpoena the records and that Dickerson was prejudiced by an unfair trial.[25]  The motion was granted.[26]

Counsel again supplemented the application on March 21, 2003, to add an eighth claim alleging that petitioner was denied due process and prejudiced by the State's

---

[24]St. Rec. Vol. 6 of 10, Trial Court Order, 7/3/02.

[25]St. Rec. Vol. 7 of 10, Motion for Rehearing, 7/31/02.

[26]St. Rec. Vol. 7 of 10, Trial Court Order, 7/31/02.

knowing use of the perjured identification testimony of Adam Hankins.[27]  On March 11, 2004, the state trial court held an evidentiary hearing after which it determined that Dickerson's trial counsel was not ineffective.[28]

Dickerson's counsel filed a timely[29] writ application in the Louisiana Fifth Circuit on May 10, 2004.  He alleged that the trial court erred by denying relief as to all eight claims raised in the application for post-conviction relief.[30]

On May 28, 2004, the Louisiana Fifth Circuit denied the application, finding no error in the trial court's order.[31]  The court declared that the portion of the application seeking review of the trial court's July 3, 2002 denial of the first seven claims was untimely under La. App. R. 4-3.  In addition, the court held that Louisiana law makes no provision for a trial court to reconsider its judgment on an application for post-conviction relief, citing State ex rel. Lewis v. Criminal Dist. Court, 571 So.2d 659 (La. 1990), thus the purported request for reconsideration did not extend the period for filing for timely

---

[27]St. Rec. Vol. 7 of 10, Supplement to Timely Filed Application for Post Conviction Relief, 3/21/03.

[28]St. Rec. Vol. 8 of 10, Minute Entry of Evidentiary Hearing, 3/11/04; Transcript of Evidetiary Hearing, p. 63, 3/11/04.

[29]Although La. App. R. 4-3 allows for only 30 days to seek further review, the trial court extended counsel's return date on two occasions and counsel met the extended deadline.  Dixon v. Cain, 316 F.3d 553 (5th Cir. 2003).

[30]St. Rec. Vol. 10 of 10, 5th Cir. Writ Application, 04-KH-528, 5/10/04.

[31]St. Rec. Vol. 8 of 10, 5th Cir. Order, 04-KH-528, 5/28/04.

review. The court also recognized that the first five claims had been denied on the merits on direct appeal. The court found, however, that the application was timely as to the eighth claim, regarding the use of perjured testimony, which had been denied on March 11, 2004. The court held that the trial court did not err in denying relief on that claim.

Thereafter, on June 2, 2004, Dickerson filed a pro se writ application in the Louisiana Fifth Circuit.[32] The court denied the application on June 10, 2004, referencing the reasons stated in its opinion issued May 28, 2004.[33]

On June 28, 2004, Dickerson's counsel filed a writ application in the Louisiana Supreme Court seeking review of the Louisiana Fifth Circuit's May 28, 2004 order denying relief on the eight claims asserted in that court.[34] A short time later, on August 9, 2004, Dickerson filed a pro se writ application in the Louisiana Supreme Court seeking review of the following claims:[35]  (1) He received ineffective assistance of counsel. (2) The State knowingly used the perjured testimony of Gladys Johnson. (3) He

---

[32]The record does not contain a copy of this application. However, the filing date appears on the face of the court's order and had been confirmed by the clerk of that court. St. Rec. Vol. 8 of 10, 5th Cir. Order, 04-KH-632, 6/10/04.

[33]St. Rec. Vol. 8 of 10, 5th Cir. Order, 04-KH-632, 6/10/04.

[34]St. Rec. Vol. 9 of 10, La. S. Ct. Writ Application, 04-KP-1607, 6/25/04; St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2004-KP-1607, 6/28/04.

[35]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 04-KH-2037, 8/9/04; St. Rec. Vol. 8 of 10, La. S. Ct. Letter, 2004-KH-2037, 8/9/04.

was denied due process and prejudiced by the trial court's denial of the motion for a new trial based on new evidence that Johnson committed perjury.

The Louisiana Supreme Court denied the first writ application without reasons on November 15, 2004.[36] Counsel applied for reconsideration and the request was denied on January 14, 2005.[37]

Thereafter, on May 13, 2005, the Louisiana Supreme Court denied Dickerson's pro se application as repetitive, citing La. Code Crim. P. art. 930.4(A) and La. Code Crim. P. art. 930.4(D).[38]

## II.    FEDERAL HABEAS PETITION

On April 20, 2005, Dickerson filed a petition for federal habeas corpus relief seeking relief on four grounds:[39] (1) The conviction was obtained through use of a coerced confession. (2) He received ineffective assistance of counsel because retained counsel was inexperienced, assisting counsel had no preparation time, counsel failed to subpoena Johnson's telephone records, and assisting counsel was incompetent as

---

[36]State ex rel. Dickerson v. State, 887 So.2d 476 (La. 2004); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2004-KP-1607, 11/15/04.

[37]St. Rec. Vol. 10 of 10, La. S. Ct. Application for Reconsideration, 04-KP-1607, 11/29/04; State ex rel. Dickerson v. State, 889 So.2d 252 (La. 2005); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2004-KP-1607, 1/14/05.

[38]State ex rel. Dickerson v. State, 902 So.2d 1012 (La. 2005); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2004-KH-2037, 5/13/05.

[39]Rec. Doc. No. 1, Petition, p. 5-6(b).

demonstrated by his later suspension from practice. (3) The State used the perjured testimony of Hankins. (4) The identification testimony of Hankins and Watkins was based on a suggestive identification process.

The State responded to the petition by arguing that Dickerson's federal petition was not timely filed because numerous state filings were untimely and afforded him no tolling of the one-year federal limitations period.[40]   Dickerson filed a reply to the opposition memorandum in which he alleged that he is entitled to tolling from the date he postmarked his state court pleadings to the Louisiana Fifth Circuit and the Louisiana Supreme Court, which would make his federal petition timely filed.[41]

III.    GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[42] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to

---

[40]Rec. Doc. No. 12.

[41]Rec. Doc. No. 13.

[42]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

Dickerson's petition, which, for reasons discussed below, is deemed filed in this court on March 9, 2005.[43]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes exhaustion, fails to address procedural default and argues that Dickerson's federal habeas corpus petition is untimely filed. For the following reasons, I find that Dickerson has exhausted available state court remedies. However, I find that his petition is timely filed, but his claims of ineffective assistance of counsel are procedurally defaulted and barred from federal court review. I further find that the remaining claims are meritless.

---

[43]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Dickerson's petition on April 20, 2005, when he paid the filing fee. Dickerson, however, dated his signature on the application on February 2, 2005. According to his reply memorandum, he properly mailed his petition to the clerk of this court on March 9, 2005. (Rec. Doc. No. 13, Exh. BB). Dickerson concedes that this is the date he submitted the petition to prison officials for mailing to this court. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   STATUTE OF LIMITATIONS

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[44]   Dickerson's conviction became final on June 29, 2001, the day on which the United States Supreme Court denied his petition for certiorari.   Geisberg, 288 F.3d at 268.

Thus, literal application of the statute would bar Dickerson's Section 2254 petition as of June 1, 2002.   As discussed at footnote 43 above, his federal petition is deemed filed on March 9, 2005, under the federal mailbox rule, almost three years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the

---

[44]Specifically, Section 2244(d) provides:

(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

one-year statute of limitations period was interrupted or otherwise tolled in either of the two ways recognized in the applicable law; i.e., equitable tolling and statutory tolling. Contrary to the State's argument, I find that proper application of statutory tolling renders Dickerson's federal petition timely.

The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the

17

time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1812 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas

18

petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).

In its opposition memorandum, the State relies in several instances on the alleged untimeliness and impropriety of several of Dickerson's filings to argue that these pleadings did not toll the one-year federal limitations period.

The State argues that Dickerson's June 6, 2004, pro se writ application to the Louisiana Fifth Circuit was not timely filed. However, because La. App. R. 4-3 has exceptions, an untimely appellate writ application can toll the one-year statute of limitations period during the time it was actually pending. <u>Melancon v. Kaylo</u>, 259 F.3d 401, 405 (5th Cir. 2001); <u>but see</u> <u>Pace v. DiGuglielmo</u>, 125 S.Ct. 1807, 1811 (2005) (the existence of exceptions to a state timeliness requirement does <u>not</u> prevent a late application from being considered <u>improperly</u> filed). Furthermore, because of overlaps

19

with proper filings by his counsel, the timeliness and tolling calculations are not actually affected by this "untimely" writ application.

The State also argues that the petitions for rehearing filed by Dickerson and his counsel were procedurally improper and therefore offered no tolling benefit.  Under La. S. Ct. Rule IX§6, "[a]n application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ."  Under this rule, Dickerson had no right to seek rehearing in the Louisiana Supreme Court and therefore gains no tolling for the improper filing.  Cf. Gaudet v. Cain, 31 Fed. Appx. 835, 2002 WL 243278 at **1 (5th Cir. Jan. 18, 2002) (application for rehearing in state circuit court did not toll the AEDPA limitations period); see also Scott v. Cain, 2002 WL 1484385 at *2 n.17 (E.D. La. Jul. 10, 2002) (Africk, J.) (Louisiana Supreme Court ruling is final when ordered in light of the Rule IX§6 disregard for rehearing applications).  Nevertheless, other properly filed pleadings overlapped the time periods in both instances and therefore the improper nature of these filings does not alter the tolling or limitations calculation in this case.

Finally, the State argues that two of Dickerson's Louisiana Supreme Court writ applications were untimely and therefore are excluded from the tolling calculation.  The State argues in part that Louisiana law required Dickerson to file for review in the Louisiana Supreme Court within 30 days after issuance of the Louisiana Fifth Circuit

20

ruling to be timely in accordance with La. Code Crim. P. art. 922 and La. S. Ct Rule X§5(a).

The State argues that the record shows that the Louisiana Fifth Circuit affirmed the conviction by opinion issued January 28, 2000.  Dickerson's writ application to the Louisiana Supreme Court was filed 45 days later on March 14, 2000 and was therefore untimely.  The record shows and Dickerson contends that this writ application was in fact mailed to the Louisiana Supreme Court on February 22, 2000, which was less than 30 days after the circuit court's ruling.

Later, on June 10, 2004, the Louisiana Fifth Circuit ruled on Dickerson's pro se post-conviction writ application.  Dickerson filed a writ application in the Louisiana Supreme Court 59 days later, on August 9, 2000.  The record shows and Dickerson contends that this writ application was in fact mailed to the Louisiana Supreme Court on July 7, 2004, which was less than 30 days after the circuit court's ruling.

The State argues that these two "untimely" writ applications did not toll the federal limitations period and render Dickerson's federal habeas corpus petition untimely.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post-conviction review is not pending for purposes of AEDPA's statute of limitations and tolling doctrines.  Williams v. Cain, 217

F.3d 303, 309-11 (5th Cir. 2000); see Pace, 125 S.Ct. at 1812.  La. S. Ct. R. X§5(a)

requires that a writ application seeking review of an appellate court ruling be filed within

30 days of the issuance of the appellate court's order.  However, the rule by its very

terms also provides for a presumption concerning mailed pleadings:

> (d) An application properly mailed shall be deemed timely filed if mailed
> on or before the last day of the delay for filing.  If the application is
> received by mail on the first legal day following the expiration of the delay,
> there shall be a rebuttable presumption that it was timely filed.  In all cases
> where the presumption does not apply, the timeliness of the mailing shall
> be shown only by an official United States postmark or by official receipt
> or certificate from the United States Postal Service made at the time of
> mailing which indicates the date thereof.  For the purpose of this rule, the
> term "by mail" applies only to the United States Postal Service.

Thus, a pleading is "deemed timely" under La. S. Ct. Rule X§5 if it is timely

postmarked.  Therefore, a timely mailed pleading is "in compliance" with La. S. Ct. Rule

X§5 and is properly filed under the analysis outlined in Williams, 217 F.3d at 309-11,

for purposes of tolling under the AEDPA.  This statutory provision is different from the

United States Fifth Circuit prohibition against the application of a state mailbox rule in

Houston v. Lack, 487 U.S. 266 (1988), to state post-conviction filings for tolling

purposes.  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S.

1057 (2000); Porter v. Dretke, 2005 WL 1185808 at *5(S.D. Tex. May 19, 2005);

Richardson v. Dretke, 85 Fed. Appx. 394, 395 (5th Cir. 2004); Kestler v. Cockrell, 73

Fed. Appx. 690, 691 (5th Cir. 2003).  This statutory presumption does not require

interpretation of state procedural rules, which the <u>Coleman v. Johnson</u> court sought to avoid, as the rule itself clearly provides for the presumption and the postmark dates are recognized by the Clerk of the Louisiana Supreme Court on the pleadings and in the letters of filing.

Dickerson's first writ application deemed filed on February 22, 2000 was timely filed after his direct appeal.  Therefore, its significance is not mere tolling under 28 U.S.C. § 2244 but is determinative of the finality of Dickerson's conviction. Furthermore, because that petition was timely, Dickerson also received the benefit of the 90-day period for seeking review in the United States Supreme Court.  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).  As noted above, Dickerson filed a timely petition for writ of certiorari in the United States Supreme Court, which further extended the finality date of his conviction.

For these reasons, Dickerson's Louisiana Supreme Court writ applications are timely and properly filed, and he is entitled to consideration for their pendency toward the finality of his conviction and in tolling the federal limitations period.  Therefore, by my calculations, Dickerson expended only 265 days of the one-year federal statute of limitations period, and his federal petition is timely.

V.    PROCEDURAL DEFAULT

Although the State fails to raise procedural default in its response, the United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420.  The court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered.  Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to

24

both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

Dickerson has asserted four grounds in support of his claim that he received ineffective assistance from his trial counsel: (1) His retained counsel misrepresented her level of experience. (2) Counsel brought in co-counsel as lead trial counsel, who was unprepared for trial. (3) Counsel failed to subpoena Gladys Johnson's telephone records, which would have established that her testimony was perjured. (4) Co-counsel's incompetence is established by his suspension from the practice of law in connection with another criminal case.  For the following reasons, I find that the Louisiana Supreme Court relied on state procedural grounds to deny relief on these claims.

Dickerson first alleged on direct appeal that he received ineffective assistance of counsel because his lawyer was not prepared.  The Louisiana Fifth Circuit declined to